1   Brian S. Kabateck, SBN 152054
      (bsk@kbklawyers.com)
2   Richard L. Kellner, SBN 171416
      (rlk@kbklawyers.com)
3   Alfredo Torrijos, SBN 222458
      (at@kbklawyers.com)
4   Karen Liao, SBN 256072
      (kliao@kbklawyers.com)
5   **KABATECK BROWN KELLNER LLP**
    644 S. Figueroa Street
6   Los Angeles, California 90017
    Telephone: (213) 217-5000
7   Fax: (213) 217-5010

8   Attorneys for Plaintiff
9   Bruce Bierman

10

11              **UNITED STATES DISTRICT COURT**

12            **NORTHERN DISTRICT OF CALIFORNIA**

13                    **OAKLAND DIVISION**

14   BRUCE BIERMAN,                  Case No.  C10-04199 PJH

15              Plaintiff,
                                     **FIRST AMENDED COMPLAINT**
16        v.
                                     **JURY TRIAL DEMANDED**
17
     INTERNATIONAL BUSINESS
18   MACHINES CORPORATION; and
19   DOES 1  through 100, inclusive;

20              Defendants.

21

22

23        Plaintiff Bruce Bierman ("Plaintiff") by his attorneys, makes the following

24   allegations based upon information and belief, except as to those allegations

25   specifically pertaining to Plaintiff and his counsel, which are based on personal

26   knowledge.  Plaintiff brings this action for damages and injunctive relief against

27   Defendants, demanding a trial by jury.

28

                    **FIRST AMENDED COMPLAINT (C10-04199 PJH)**

**NATURE OF THE ACTION**

1.     Through extensive research and development, and the expenditure of a considerable amount of time, effort and a substantial amount of money, Plaintiff invented and developed a product and technology named "Bookmark."

2.     Bookmark is data protection software which, for the first time, provided worry-free computing by automatically, and/or manually, "taking a picture" of the computer system's state, suspending all open programs and unsaved work, and storing that "image" to the system's non-volatile storage medium for later resumption, either automatically or manually.  This new technology allowed users to auto-resume work in the event of power failure, hardware breakdowns or system shutdown.  This technology also allowed computer users to conveniently and instantly pick up where they left off by pressing the "resume" key command with a single keystroke.  Thus, like placing a bookmark in a book to save a reader's place, Bookmark did the same electronically for computers – an "electronic bookmark" allowing users to "mark" their place with respect to the entire system. Additionally, Bookmark had a built-in optional password protection feature, allowing users to keep their Bookmarked work private.

3.     Between 1985 and 1995, Plaintiff engaged in discussions and negotiations with Defendant International Business Machines Corporation ("IBM") for the licensing of Plaintiff's Bookmark products and/or Bookmark technology.

4.     Based upon IBM's false representation that it intended to license Plaintiff's Bookmark products and/or Bookmark technology and after IBM entered into a binding non-disclosure agreement, Plaintiff disclosed to IBM confidential information constituting trade secrets about his Bookmark technology.  Pursuant to the parties' non-disclosure agreement, IBM agreed, among other promises, to maintain the secrecy of Plaintiff's confidential information and to not use the confidential information for purposes other than those necessary to directly further

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

1   IBM's evaluation specifically for the purpose of potentially licensing Plaintiff's

2   Bookmark products and/or Bookmark technology.

3        5.    Unbeknownst to Plaintiff, IBM's representations were false.  Plaintiff

4   has since learned that IBM had no intention of licensing Plaintiff's Bookmark

5   products or Bookmark technology and only engaged in discussions and

6   negotiations for the sole purpose of wrongfully obtaining Plaintiff's confidential

7   information and trade secrets.  Had Plaintiff known that IBM had no intention of

8   ever licensing Plaintiff's Bookmark products or Bookmark technology, Plaintiff

9   would never have agreed to provide IBM with his confidential information and

10  trade secrets.

11       6.    In or around June 2010, Plaintiff discovered for the first time that

12  IBM stole Plaintiff's Bookmark technology and wrongfully disclosed and used

13  Plaintiff's technology for its own financial gain, profit and business advantage.

14  Indeed, since June 2010 Plaintiff discovered – for the first time – that during the

15  same period that IBM's licensing negotiations with Plaintiff were taking place,

16  IBM applied for and obtained patents for data protection technology substantially

17  similar to Plaintiff's Bookmark technology.

18       7.    This action arises from IBM's wrongful disclosure and use of

19  Plaintiff's trade secrets.  Accordingly, Plaintiff brings this action asserting claims

20  for misappropriation of trade secrets in violation of *Civil Code* section 3426 et seq.,

21  breach of confidence, breach of an implied-in-fact contract, unjust enrichment,

22  intentional misrepresentation and breach of contract against IBM.

23

24                            **THE PARTIES**

25       8.    At all relevant times until 1992, Plaintiff Bruce Bierman was a

26  resident of the County of Marin, California.

27       9.    Plaintiff is informed and believes, and on that basis alleges, that

28  International Business Machines Corporation ("IBM") is a New York corporation

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

with its principal place of business at 1 New Orchard Road, Armonk, New York 10504.  Plaintiff is informed and believes, and on that basis alleges, that IBM sells and markets technology products and services in the State of California and in this judicial district.

## GENERAL ALLEGATIONS

10.    Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 100, inclusive, and therefore, sues these defendants under fictitious names.  Plaintiff will amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Doe Defendants are legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff.

11.    Plaintiff is informed and believes, and on that basis alleges, that all Defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, captive agents or brokers, conspirators, ostensible agents, partners, brokers and/or joint venturers and employees of all other Defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy and/or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-defendants; however, this allegation is pleaded as an "alternative" theory wherever not doing so would result in a contradiction with other allegations.

12.    All allegations in this complaint are based on information and belief and/or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.  Whenever allegations in this complaint are contrary or inconsistent, such allegations shall be deemed alternative.

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

**JURISDICTION AND VENUE**

13.    This Court has jurisdiction over the entire action by virtue of the fact that this is a civil action wherein the matter in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of the Court.  The acts and omissions complained of in this action took place in the State of California.  Venue is proper because the acts and/or omissions complained of took place, in whole or in part within the venue of this Court.

**FACTUAL BACKGROUND**

14.    Plaintiff created developed the technology for computer software which he eventually named "Bookmark."  Designed to prevent the loss of valuable data due to electrical power fluctuations, hardware breakdowns, or system shutdown, Bookmark automatically or manually "took a picture" and stored an image of a computer system's RAM (Random Access Memory containing open programs and unsaved work) and the system's state, to the computer's non-volatile storage medium or hard disk.  Bookmark allowed the user to automatically resume previous work, or resume with a single keystroke after system power up, among other methods.  Additionally, Bookmark offered a built-in password protection function to prevent unauthorized viewing of Bookmarked work by others, among other features.

15.    In or around June 1986, Plaintiff founded, formed and solely owned software publishing and marketing companies from 1986 to 1996 bearing the names Intellisoft International, Inc., Solidsoft, Inc., Silverware, Inc., Intellisoft, Ltd. and Intellisoft GmbH (collectively "Intellisoft") to sell and/or license the Bookmark products and Bookmark technology.

16.    Plaintiff, as the owner of the intellectual property, entered into licensing, marketing & distribution agreements with the Intellisoft entities, thereby

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

1   giving the Intellisoft entities the non-exclusive right to sell and/or license the

2   Bookmark products and Bookmark technology.

3      17.   Plaintiff and Intellisoft were located in the City of Novato, California

4   until 1992 when they relocated to Woodland Hills, California.

5      18.   In or around June 1986 – before Bookmark was publicly available –

6   Plaintiff contacted IBM with an offer to license the Bookmark products or

7   Bookmark technology to IBM for it to sell as an integrated component in its

8   computer systems.  When Plaintiff initially approached IBM with this offer, he

9   provided IBM with a general description of Bookmark, a sample licensing

10  agreement and pricing sheet.  After receiving these materials, IBM indicated that it

11  was interested in potentially licensing Plaintiff's Bookmark products or Bookmark

12  technology and requested that Plaintiff provide it with a copy of the Bookmark

13  software for evaluation.  Plaintiff agreed to provide IBM with an evaluation copy

14  of the Bookmark software but only if IBM first agreed to enter into and by bound

15  by a confidentiality and non-disclosure agreement ("NDA").

16     19.   IBM agreed to be bound by an NDA and did in fact negotiate and

17  enter into an NDA.  Pursuant to that NDA IBM agreed, *in haec verba*:

18

19   • "that information disclosed by Intellisoft International
20   having offices in Novato, CA. ("Intellisoft"), including
     information acquired by Receiving Party from Intellisoft
21   employees or inspection of Intellisoft's property, relating to
     Intellisoft's products, designs, business plans, finances,
22   research, development, know-how, confidential information
     disclosed to Intellisoft by third parties and information
23   particularly with regard to the: memory image transfer
     technology incorporated in pc and macintosh runtime
24   software and source code, including but not limited to the
     software products distributed under the trademark
25   Bookmark, and marketing contacts shall be considered
26   Confidential Information";

27

28

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

- "to maintain the confidence of the Confidential Information and to prevent its unauthorized dissemination"; and

- "not to use the Confidential Information for purposes other than those necessary to directly further the: evaluation with regards to potential licensing and development of the disclosed technology for use with computers, power supply products, backup power supply products, plug in UPS systems and low battery detection systems."

20.    In the NDA, IBM also acknowledged, *in haec verba*, "that unauthorized disclosure or use of Confidential Information could cause irreparable harm and significant injury which may be difficult to ascertain."

21.    In or around September 1986 – after IBM entered into the NDA – Plaintiff sent IBM a specially compiled, non-public and confidential "evaluation version" of the Bookmark software.  This evaluation version of the Bookmark software was sent to IBM vice-president Bill Lowe at IBM's corporate offices located in Armonk, New York.

22.    The media containing the evaluation version of the Bookmark software that Plaintiff sent IBM was shrink-wrapped with a printed copy of the "Notice of Limited Warranty and Licensing Agreement" visible through the shrink-wrap.  A true and correct copy of the "Notice of Limited Warranty and Licensing Agreement" is attached hereto as Exhibit A.

23.    Affixed to the shrink-wrap was a silver metallic sticker that stated in bold text, *in haec verba*:

> **For Evaluation Purposes Only**
>
> **Not for Resale**

24.    The "Notice of Limited Warranty and Licensing Agreement" that was visible through the shrink-wrap provided in relevant part:

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

IMPORTANT! YOU SHOULD CAREFULLY READ THE TERMS AND CONDITIONS BELOW, AND THE TERMS AND CONDITIONS OF THE INTELLISOFT INTERNATIONAL LIMITED WARRANTY AND LICENSE AGREEMENT BEFORE OPENING THIS PACKAGE.  OPENING THIS PACKAGE INDICATES YOUR ACCEPTANCE OF ALL THE FOLLOWING TERMS AND CONDITIONS.   IF YOU DO NOT AGREE WITH THEM, YOU SHOULD PROMPTLY RETURN THE PACKAGE UNOPENED AND YOUR MONEY WILL BE REFUNDED.

BOOKMARK™ software is offered under the terms and conditions of the enclosed INTELLISOFT INTERNATIONAL LIMITED WARRANT AND LICENSE AGREEMENT.  A copy of this LIMITED WARRANTY AND LICENSE AGREEMENT may be obtained from your dealer or by writing INTELLISOFT INTERNATIONAL at the above address.

[…]

Our LICENSE AGREEMENT sets forth the terms and conditions under which you may use, copy and merge the program and transfer the program and license.  You may use the program on a single machine, but may not use, copy, modify, transfer, foreign language translate, or electronically transfer the program, or any copy, modification or merged portion, in whole or in part, except as expressly provided for in the LICENSE AGREEMENT.  If you transfer possession of any copy, modification or merged portion of the program to another party, your license is automatically terminated.

[Exhibit A.]

25.   The "Notice of Limited Warranty and Licensing Agreement" also stated the following:

Bookmark™ is a trademark of INTELLISOFT International.   Copyright © 1986 by INTELLISOFT

— 8 —

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

1  International.  All Rights Reserved.  Patent Pending.

2  [Exhibit A.]

3      26.    As part of the process of installing the evaluation version of the

4  Bookmark software that Plaintiff sent IBM the following would be displayed on

5  the screen of the computer, *in haec verba*:

---

BOOKMARK IS NOT COPY PROTECTED

This copy of BOOKMARK software may be used only on a single authorized computer in accordance with the terms and conditions of the INTELLISOFT International Limited Warranty and License Agreement.  Our "install/de-install" is not related to copy protection. (NOTE: USA and Canada only.)

Copyright (c) 1986
All Rights Reserved.  Patent Pending.

---

16      27.    In addition to the "Notice of Limited Warranty and Licensing

17  Agreement," the media containing the evaluation version of the Bookmark

18  software that Plaintiff sent IBM was also shrink-wrapped with a printed copy of

19  the "Intellisoft Limited Warranty, Disclaimers and License Agreement."  A true

20  and correct copy of the "Intellisoft Limited Warranty, Disclaimers and License

21  Agreement" is attached hereto as Exhibit B.

22      28.     The "Intellisoft Limited Warranty, Disclaimers and License

23  Agreement" that was included with evaluation version of the Bookmark software

24  that Plaintiff sent IBM provided in relevant part:

25          You may not reverse assemble or reverse compile the
26          program without INTELLISOFT's prior written consent.
            You must reproduce and include the copyright notice on
27          any copy or portion merged into another program.

28

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

1
2
3
4
5

> YOU MAY NOT USE, COPY, MODIFY, FOREIGN LANGUAGE TRANSLATE OR ELECTRONICALLY TRANSFER THE PROGRAM, OR ANY COPY, MODIFICATION OR MERGED PORTION, IN WHOLE OR IN PART, EXCEPT AS EXPRESSLY PROVIDED FOR IN THIS LICENSE.

6   [Exhibit B.]

7       29.   The "Intellisoft Limited Warranty, Disclaimers and License

8   Agreement" also provided in relevant part:

9
10
11
12

> You may not sublicense, assign or transfer the license or the program except as expressly provided in this Agreement.  Any attempt otherwise to sublicense, assign or transfer any of the rights, duties or obligations hereunder is void.

13   [Exhibit B.]

14       30.   From 1986 to 1988, IBM vice-president, Bill Lowe, told Plaintiff that

15   IBM intended to license Plaintiff's Bookmark products and/or Bookmark

16   technology for its IBM PCs.  Bill Lowe told Plaintiff that IBM needed to evaluate

17   how it would implement its licensing of the Bookmark products and/or Bookmark

18   technology, including: (i) what market sector Bookmark would be targeted at; (ii)

19   how Bookmark would work in a Token Ring network environment; and (iii)

20   whether IBM should separately bundle Bookmark with its computers, include

21   Bookmark on a chip and/or include Bookmark as part of the operating system.

22   Throughout this process Bill Lowe informed Plaintiff that IBM would be licensing

23   the Bookmark products and/or Bookmark technology.

24       31.   Bill Lowe informed Plaintiff that IBM's PC Software Development

25   Department, which was headed by Steven Pancoast, was assigned to evaluate the

26   technical implementation of the Bookmark products and/or Bookmark technology.

27   Bill Lowe instructed Plaintiff to contact IBM's PC Software Development

28

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

Department and directed Plaintiff to provide the department with whatever information it requested so that IBM could conclude its technical evaluation of Bookmark.

32.     IBM requested and obtained confidential information from Plaintiff, including: (i) the methods and processes employed by the Bookmark products; (ii) techniques for dealing with specific compatibility issues between the Bookmark products and other IBM and third-party hardware and software (including adapter cards, components, processors, memory, video, programs, the operating system and device drivers); and (iii) Plaintiff's marketing and business plans and customer lists.

33.     In and or around the end of 1988, Bill Lowe informed Plaintiff that he was leaving IBM and that going forward Richard Gerstner, another vice-president at IBM, would be in charge of IBM's licensing of the Bookmark products and/or Bookmark technology.  Richard Gerstner informed Plaintiff that Steven Pancoast and/or IBM's PC Software Development Department was still evaluating the Bookmark products and/or Bookmark technology.  Richard Gerstner informed Plaintiff that IBM would enter into a licensing agreement with Plaintiff once Steven Pancoast and/or IBM's PC Software Development Department concluded its assignment.

34.     Despite this extensive "evaluation process," IBM never licensed Plaintiff's Bookmark products and/or Bookmark technology.

35.     Throughout the entire "evaluation process," IBM concealed from Plaintiff that: (i) IBM was developing software that would replicate the function and features of Bookmark; (ii) IBM was applying for patents based on Plaintiff's Bookmark technology; or (iii) IBM was incorporating Plaintiff's Bookmark products and/or Bookmark technology in its products without licensing the technology from Plaintiff.

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

36.     In March 2010, Plaintiff was contacted by attorneys who stated that they represented Wistron Corporation ("Wistron").  The attorneys explained that Toshiba Corporation had filed a complaint with the U.S. International Trade Commission asserting that Wistron was infringing on its patents.  According to these attorneys, they had learned through investigation and discovery that one or more of the patents that Toshiba Corporation sought to enforce involved technology that might have been developed by Plaintiff.  Prior to being contacted by Wistron's attorneys, Plaintiff did not know and never had any reason to suspect that Toshiba Corporation – or anyone else, for that matter – had breached a non-disclosure agreement and had misappropriated his confidential Bookmark technology.  Plaintiff thereafter began conducting an investigation concerning the patents that Toshiba Corporation had obtained.  In the course of that investigation, Plaintiff discovered that IBM had also applied for and obtained one or more patents based on Plaintiff's Bookmark technology.  Further investigation revealed that the IBM employee listed as an "inventor" on these patents was the same individual that was Plaintiff's "contact" at IBM when the company was "evaluating" Plaintiff's Bookmark products and Bookmark technology.  Therefore, it was not until about June 2010 that Plaintiff had any knowledge of IBM's wrongful acts.

37.     Since June 2010, Plaintiff has learned that IBM misrepresented that it was interested in licensing Plaintiff's Bookmark products and/or Bookmark technology and concealed that it was developing software that would replicate the function and features of Bookmark, applying for patents based on Plaintiff's Bookmark technology and incorporating Plaintiff's Bookmark products and/or Bookmark technology in its products without licensing the technology from Plaintiff.   As a result of its misrepresentations and concealments, IBM was able to successfully misappropriate the confidential information that it wrongfully obtained from Plaintiff by: (i) incorporating the technology in its products without

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

1   paying Plaintiff for its use; (ii) misrepresenting that it developed the technology;

2   (iii) secretly applying for and obtaining patents here in the United States for the

3   Bookmark technology; and (iv) offering to license and licensing Plaintiff's

4   Bookmark products and/or Bookmark technology to others.

5        38.    IBM was able to obtain Plaintiff's confidential information solely

6   because IBM falsely represented that it would license and pay for Plaintiff's

7   technology if it used Plaintiff's technology.  In fact, IBM had no intention of

8   licensing or paying for Plaintiff's technology and instead made these

9   misrepresentations for the sole purpose of wrongfully obtaining and

10  misappropriating Plaintiff's confidential information.

11

12                      **FIRST CAUSE OF ACTION**

13                   **Misappropriation of Trade Secrets**

14               **(California Civil Code § 3426, et seq.)**

15       39.    Plaintiff re-alleges and incorporates by reference the allegations

16  contained in the preceding paragraphs of this complaint, as though fully set forth

17  herein.

18       40.    Plaintiff, through long and extensive research and development, and

19  the expenditure of a considerable amount of time, effort and money, developed

20  commercially valuable trade secrets and an extensive amount of confidential,

21  proprietary, technical and business information concerning the research,

22  development, formulation, production and marketing of technology behind

23  Bookmark.  Said information constitutes valuable commercial assets and a

24  competitive advantage to Plaintiff.  Plaintiff has kept said information secret with

25  restrictions on its use and disclosure by all those to whom said information has

26  been known.

27       41.    The aforementioned trade secrets and confidential information were

28  disclosed and entrusted to IBM.  This information was only provided to IBM: (i)

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

1    after IBM represented that it would license and pay for the confidential

2    information if it used Plaintiff's technology in its products; and (ii) after IBM

3    agreed to and entered into a binding non-disclosure agreement which precluded the

4    use and disclosure of the information.  IBM knew that said information was

5    confidential and that it was considered to comprise trade secrets of Plaintiff.  IBM

6    also knew – and agreed – that said information was not to be revealed or used, that

7    it was a valuable commercial asset of Plaintiff and that Plaintiff had expended

8    much time, effort and money in developing the aforementioned confidential and

9    trade secret information.

10       42.    IBM breached its duty to maintain secrecy and limit its use by

11   disclosing and using Plaintiff's trade secrets and confidential information in

12   violation of *Civil Code* section 3426, et seq.

13       43.    As a direct and proximate result of IBM's misappropriation of

14   Plaintiff's trade secrets, Plaintiff has suffered actual losses within the meaning of

15   Section 3426.3(a) of California's Civil Code.  As a further proximate result of the

16   misappropriation, IBM has been unjustly enriched through the wrongful use of

17   Plaintiff's trade secrets.

18       44.    IBM knowingly, willfully and deliberately misappropriated Plaintiff's

19   trade secrets and confidential information with full knowledge of their secret,

20   confidential nature and their commercial value.  IBM's wrongful use and unlawful

21   exploitation of Plaintiff's trade secrets and confidential information constitutes

22   willful and malicious misappropriation.  Plaintiff, therefore, is entitled to punitive

23   damages pursuant to *Civil Code* § 3246.3(c).

24       45.    Plaintiff is entitled to an award of reasonable attorneys' fees pursuant

25   to *Civil Code* § 3426.4.

26       46.    The misappropriation of Plaintiff's trade secrets and confidential

27   information by IBM is greatly and irreparably damaging to Plaintiff.  IBM will

28

1   continue to damage Plaintiff unless enjoined by this court pursuant to *Civil Code*

2   section 3426.2.

3

4   ## SECOND CAUSE OF ACTION

5   ### Breach of Confidence

6   47.   Plaintiff re-alleges and incorporates by reference the allegations

7   contained in the preceding paragraphs of this complaint, as though fully set forth

8   herein.

9   48.   Plaintiff disclosed and entrusted to IBM information regarding

10  Bookmark in confidence.   At the time that it received said information, IBM knew

11  that the information was confidential.  IBM knew that the information was not to

12  be revealed or used, that it was a valuable commercial asset of Plaintiff.  IBM also

13  knew that Plaintiff had expended much time, effort and money in developing the

14  aforementioned confidential information.

15  49.   Upon information and belief, IBM breached its duty to maintain

16  confidentiality by using and continuing to use Plaintiff's aforementioned

17  confidential information without Plaintiff's consent.

18  50.   As a direct, proximate and legal result of IBM's breach of confidence,

19  Plaintiff has suffered damages in an amount to be proved at trial.

20

21  ## THIRD CAUSE OF ACTION

22  ### Breach of Implied-in-Fact Contract

23  51.   Plaintiff re-alleges and incorporates by reference the allegations

24  contained in the preceding paragraphs of this complaint, as though fully set forth

25  herein.

26  52.   Plaintiff disclosed technology for Bookmark that he created to IBM

27  for potential licensing.  Through negotiations, Plaintiff submitted his work to IBM

28  with the understanding and expectation – fully and clearly understood by IBM –

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

that Plaintiff would be reasonably compensated for its use by IBM.  IBM had the opportunity to reject disclosure of Plaintiff's idea if Plaintiff's conditions were unacceptable.  Instead, by using Plaintiff's technology in its own computer products, IBM voluntarily accepted the disclosure knowing the conditions upon which said information was tendered and the reasonable value of Plaintiff's work.  In doing so, IBM entered into an implied-in-fact contract, promising to compensate Plaintiff for the use of Plaintiff's technology.

53.     By using Plaintiff's technology in its own computer products and not compensating Plaintiff for the use of his work, IBM breached the terms of the parties' implied-in-fact contract.

54.     As a direct, proximate and legal result of IBM's breach, Plaintiff has been and continues to be, damaged.

## FOURTH CAUSE OF ACTION

### Intentional Misrepresentation and Fraudulent Concealment

55.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

56.     IBM made representations to Plaintiff that it intended to enter into a licensing agreement with Plaintiff for the Bookmark products and/or Bookmark technology when in fact it had no intention of doing so.

57.     IBM knew that the representation that it intended to enter into a licensing agreement with Plaintiff were false when it made them and IBM made them intentionally.  IBM also knew that said representations were material.

58.     IBM concealed from Plaintiff and/or failed to disclose to Plaintiff that: (i) IBM was developing software that would replicate the function and features of Bookmark; (ii) IBM was applying for patents based on Plaintiff's Bookmark technology; and (iii) IBM was incorporating Plaintiff's Bookmark products and/or

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

Bookmark technology in its products without licensing the technology from Plaintiff.

59.    The information concealed and/or not disclosed by IBM to Plaintiff was material in that a reasonable person would have considered them important in deciding whether or not to disclose trade secrets and confidential information to IBM.   IBM knew that the information that it concealed and/or failed to disclose to Plaintiff was material information that someone in Plaintiff's position would have wanted to know.   IBM had a duty to disclose the information that it concealed and/or failed to disclose to Plaintiff.

60.    IBM intended that Plaintiff rely on its representations and its concealed and/or non-disclosed facts and thereby induced Plaintiff to disclose his trade secrets and confidential information.

61.    Plaintiff reasonably relied on IBM's representations and IBM's concealed and/or non-disclosed facts.   Plaintiff would not have revealed his trade secrets and confidential information to IBM had he known the truth.

62.    Plaintiff was harmed when his trade secrets and confidential information were disclosed and wrongfully used without his consent.   Plaintiff's reliance on IBM's representations and IBM's concealed and/or non-disclosed facts was a substantial factor in causing the harm.

63.    IBM was motivated by its financial interest in lulling Plaintiff to disclose confidential information and trade secrets, such as to constitute oppression, fraud or malice under California *Civil Code* section 3294, entitling Plaintiff to punitive damages in an amount appropriate to punish and set an example of IBM.

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

**FIFTH CAUSE OF ACTION**

**Breach of Contract – Non-Disclosure Agreement**

64.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

65.     IBM entered into a NDA with Intellisoft.

66.     Plaintiff was and is an intended third-party beneficiary of the NDA.

67.     Intellisoft and Plaintiff have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms of the NDA.

68.     Plaintiff is informed and believes and on that basis alleges that IBM breached the NDA by disclosing and using Plaintiff's trade secrets and confidential information.

69.     As a result of IBM's breach of the NDA, IBM has caused damage to Plaintiff in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**

**Breach of Contract – Licensing Agreement**

70.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

71.     IBM agreed to be bound by the Licensing Agreement.

72.     Plaintiff was and is an intended third-party beneficiary of the Licensing Agreement.

73.     Intellisoft and Plaintiff have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the Licensing Agreement.

— 18 —

74.     IBM has breached the Licensing Agreement by, among other things, decompiling the evaluation version of the Bookmark products, reverse engineering the evaluation version of the Bookmark products, incorporating portions of the Bookmark product into its systems, reselling the Bookmark products, failing to place Plaintiff's copyright notice on the systems that it sold with the Bookmark products and/or Bookmark technology, and filing patents based on Plaintiff's Bookmark technology.

75.     As a result of IBM's breach of the Licensing Agreement, IBM has caused damage to Plaintiff in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment/Restitution

76.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

77.     IBM unjustly received benefits at the expense of Plaintiff through IBM's wrongful conduct, including, but not limited to, IBM's misappropriation of Plaintiff's Bookmark products and Bookmark technology, breach of the NDA and breach of the Licensing Agreement.

78.     It would be unjust for IBM to retain any value it obtained as a result of its wrongful conduct.

79.     Plaintiff is entitled to the establishment of a constructive trust consisting of the benefit conferred upon IBM by the revenues derived from its wrongful conduct at the expense of Plaintiff, and all profits derived from that wrongful conduct.

80.     Plaintiff is further entitled to full restitution of all amounts in which IBM has been unjustly enriched at Plaintiff's expense.

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

**EIGHTH CAUSE OF ACTION**

**An Accounting**

81.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

82.     IBM has obtained business through the use of unlawful conduct including, but not limited to, IBM's misappropriation of Plaintiff's Bookmark products and Bookmark technology, breach of the NDA and breach of the Licensing Agreement.

83.     IBM has received money as a result of its misconduct, at the expense of Plaintiff and some or all of such money is rightfully due to Plaintiff.

84.     The amount of money due from IBM to Plaintiff cannot be ascertained without an accounting of the income and gross profits that IBM has obtained through its wrongful and unlawful conduct.

85.     Plaintiff is entitled, therefore, to a full accounting.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for the following:

1.     For a preliminary and permanent injunction restraining Defendant IBM, as well as its officers, agents, servants, employees and attorneys, and those in active concert or participation with any of them, from further use of Plaintiff's trade secrets and confidential information;

2.     For an accounting;

3.     For an Order finding a constructive trust for Plaintiff's benefit, consisting of all revenues received by Defendants from their wrongful conduct which should rightfully have been received by Plaintiff and all profits derived from that wrongful conduct, and directing Defendants to pay all such sums to Plaintiff;

4.     For restitution and disgorgement of all ill-gotten gains unjustly

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

1   obtained and retained by Defendants through the acts complained of herein;

2        5.     For damages to be proven at trial;

3        6.     For punitive damages in an amount to be determined at trial;

4        7.     For both pre and post-judgment interest at the maximum allowable

5   rate on any amounts awarded;

6        8.     For an Order awarding Plaintiff his attorneys' fees and costs;

7        9.     For an Order awarding Plaintiff all such other and further relief that

8   the Court may deem just and proper.

9

10   DATED: October 15, 2010           **KABATECK BROWN KELLNER LLP**

11

12                         By:      /s/

13                               Brian S. Kabateck

14                               Richard L. Kellner
                            Alfredo Torrijos

15                               Karen Liao

16                         *Attorneys for Plaintiff Bruce Bierman*

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

1

**DEMAND FOR JURY TRIAL**

2

Plaintiff hereby demands trial by jury of all claims and causes of action in

3

this lawsuit.

4

5

DATED: October 15, 2010                    **KABATECK BROWN KELLNER LLP**

6

7

By:        /s/

8                                              Brian S. Kabateck
                                               Richard L. Kellner
9                                              Alfredo Torrijos
                                               Karen Liao
10

11                                       *Attorneys for Plaintiff Bruce Bierman*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT (C10-04199 PJH)**

**EXHIBIT A**



T.M.

## DATA PROTECTION SOFTWARE

**AUTOMATED SAVE, EXIT AND RESUME**
- If you decide to call it a day, you can power down, and upon restart BOOKMARK will bring you back to the point of the last BOOKMARK placement. It's like having a BOOKMARK in your computer!
- Actually works faster than reloading program and reloading file the old way . . . the BOOKMARK way puts you there faster!

**EASY TO USE**
- You decide how often work is saved, by number of keystrokes and/or number of minutes.

**ELIMINATES NEED FOR BACK UP BATTERY**
- Costly back up battery systems are no longer needed when work in progress is already saved to the point of the previous BOOKMARK placement.

**FULLY AUTOMATED**
- Eliminates the need for user control . . . you can even run a program overnight, and if the power fails, BOOKMARK's **Auto-Resume** function allows your computer to resume operation without intervention.

**HARD DISK FULL PROTECTION**
- "Disk Full" messages no longer result in loss of work in progress because BOOKMARK already has hard disk space set aside.

**PREVENTS DATA LOSS DUE TO POWER FAILURE**
- BOOKMARK runs with most software and saves as you go to prevent accidental data loss.
- Work in progress can be resumed within seconds after system crash, frozen keyboard, power failure, accidental reset or power down.

**TRANSPARENT OPERATION**
- BOOKMARK operates without interfering with most programs.

**BOOKMARK is a memory resident utility that automatically and periodically takes a snapshot of system and video RAM then saves it to a reserved and hidden area of the hard disk subsystem. Work in progress can be resumed within four to eight seconds after reboot. Resumption speed is dependent upon your processor and hard disk speed.**

### REQUIREMENTS:
IBM PC/XT/AT OR 100% IBM COMPATIBLE • 256K TO 640K RAM • IBM DOS 2.1 OR HIGHER
1 FLOPPY DISK DRIVE • HARD DISK (10 MEGABYTES MINIMUM)
VIDEO DISPLAY ADAPTER: IBM (MONOCHROME, COLOR/GRAPHICS, ENHANCED
COLOR/GRAPHICS), AST, HERCULES.
(BOOKMARK OCCUPIES AN EQUIVALENT AMOUNT OF SPACE
ON YOUR HARD DISK AS IN SYSTEM RAM PLUS VIDEO RAM)

## INTELLISOFT™



### INTERNATIONAL

70 Digital Drive • P.O. Box 5055 • Novato, California 94948 • (415) 883-1188

#### NOTICE OF LIMITED WARRANTY AND LICENSE AGREEMENT

**IMPORTANT!** YOU SHOULD CAREFULLY READ THE TERMS AND CONDITIONS BELOW, AND THE TERMS AND CONDI-
TIONS OF THE INTELLISOFT INTERNATIONAL LIMITED WARRANTY AND LICENSE AGREEMENT BEFORE OPENING
THIS PACKAGE. **OPENING THIS PACKAGE INDICATES YOUR ACCEPTANCE OF ALL THE FOLLOWING TERMS AND CONDI-
TIONS.** IF YOU DO NOT AGREE WITH THEM, YOU SHOULD PROMPTLY RETURN THE PACKAGE **UNOPENED** AND YOUR
MONEY WILL BE REFUNDED.

BOOKMARK™ software is offered under the terms and conditions of the enclosed INTELLISOFT INTERNATIONAL LIMITED
WARRANTY AND LICENSE AGREEMENT. A copy of this LIMITED WARRANTY AND LICENSE AGREEMENT may be obtained
from your dealer or by writing INTELLISOFT International at the above address.

Our LIMITED WARRANTY states that programs are provided "as is" without warranty or any kind, expressed or implied, except
that program diskettes are warranted to be free from defects in material and workmanship for a period of 90 days from date of
delivery. Our LICENSE AGREEMENT sets forth the terms and conditions under which you may use, copy and merge the pro-
gram and transfer the program and license. You may use the program on a single machine, but may not use, copy, modify, trans-
fer, foreign language translate, or electronically transfer the program, or any copy, modification or merged portion, in whole or in
part, except as expressly provided for in the LICENSE AGREEMENT. If you transfer possession of any copy, modification or
merged portion of the program to another party, your license is automatically terminated.

As required by United States export regulations, you shall not permit export of the program or any direct product of it to any
country to which export is then controlled by the United States Office of Export Administration, unless you have that agency's
prior written approval and the prior written approval of INTELLISOFT International.

BOOKMARK™ is a trademark of INTELLISOFT International. Copyright © 1986 by INTELLISOFT International.
All Rights Reserved.  Patent Pending.
IBM PC/XT/AT are registered trademarks of International Business Machines Corporation.
AST is a registered trademark of AST Research, Inc. Hercules is a trademark of Hercules Computer Technology.

Made in U.S.A.

1001

**EXHIBIT B**

# INTELLISOFT INTERNATIONAL
# LIMITED WARRANTY AND LICENSE AGREEMENT

BOOKMARK™ software is offered under the terms and conditions of the INTELLISOFT International Limited Warranty and License Agreement. Our Limited Warranty states that programs are provided "as is" without warranty of any kind, expressed or implied, except that program diskettes are warranted to be free from defects in materials and workmanship for a period of 90 days from the date of delivery.

In the event that program diskettes ordered from INTELLISOFT International are deemed defective as described above, you should send the diskette(s) and a copy of your receipt for replacement with an explanation of your problem to:

INTELLISOFT International
70 Digital Drive • P.O. Box 5055 • Novato, CA 94948

Please be sure your package is prepaid as we cannot accept C.O.D.'s.

## INTELLISOFT INTERNATIONAL LIMITED WARRANTY

THE PROGRAM IS PROVIDED "AS IS" WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO THE IMPLIED WARRANTIES OR MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE PROGRAM IS WITH YOU. SHOULD THE PROGRAM PROVE DEFECTIVE, YOU ASSUME THE ENTIRE COST OF ALL NECESSARY SERVICING, REPAIR OR CORRECTION.

SOME STATES DO NOT ALLOW THE EXCLUSION OF IMPLIED WARRANTIES, SO THE ABOVE EXCLUSION MAY NOT APPLY TO YOU. THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS AND YOU MAY ALSO HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

We do not warrant that the functions contained in the program will meet your requirements or that the operation of the program will be uninterrupted or error free.

However, we do warrant the diskette(s) on which the program is furnished to be free from defects and workmanship under normal use for a period of ninety (90) days from the date of delivery to you as evidenced by a copy of your receipt.

## LIMITATIONS OF REMEDIES

Our entire liability and your exclusive remedy shall be:
1. the replacement of any diskette(s) not meeting our "Limited Warranty" and which is returned to us with a copy of your receipt, or
2. if we are unable to deliver a replacement diskette(s) which is free of defects in materials or workmanship, you may terminate this Agreement by returning the program and your money will be refunded.

IN NO EVENT WILL WE BE LIABLE TO YOU FOR ANY DAMAGES, INCLUDING ANY LOST PROFITS, LOST SAVINGS OR OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE SUCH PROGRAM EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, OR FOR ANY CLAIM BY ANY OTHER PARTY.

SOME STATES DO NOT ALLOW THE LIMITATION OR EXCLUSION OF LIABILITY FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU.

YOU SHOULD CAREFULLY READ THE FOLLOWING TERMS AND CONDITIONS BEFORE OPENING THIS PACKAGE. OPENING THIS PACKAGE INDICATES YOUR ACCEPTANCE OF THESE TERMS AND CONDITIONS. IF YOU DO NOT AGREE WITH THEM, YOU SHOULD PROMPTLY RETURN THE PACKAGE UNOPENED AND YOUR MONEY WILL BE REFUNDED.

We of INTELLISOFT provide this program and license its use; you, the user, assume responsibility for the selection of the program to achieve your intended results, and for the installation, use and results obtained from the program.

## LICENSE:

You may: a) use the program on a single machine, b) copy the program into any machine-readable or printed form for backup or purposes in support of your use of the program on the single machine (Certain programs, however, may include mechanisms to limit or inhibit copying. They are marked "copy protected"), c) merge the program into another program for your use on the single machine (Any portion of this program merged into another program will continue to be subject to the terms and conditions of this Agreement) and transfer the program and license to another party if the other party agrees to accept the terms and conditions of this Agreement. If you transfer the program, you must at the same time either transfer all copies, whether in printed or machine-readable form, to the same party or destroy any copies not transferred; this includes all portions of the program contained or merged into other programs.

You may not revise assemble or reverse compile the program without INTELLISOFT International's prior written consent.

You must reproduce and include the copyright notice on any copy or portion merged into another program.

YOU MAY NOT USE, COPY, MODIFY, FOREIGN LANGUAGE TRANSLATE, OR ELECTRONICALLY TRANSFER THE PROGRAM, OR ANY COPY, MODIFICATION OR MERGED PORTION, IN WHOLE OR IN PART, EXCEPT AS EXPRESSLY PROVIDED FOR IN THIS LICENSE.

IF YOU TRANSFER POSSESSION OF ANY COPY, MODIFICATION OR MERGED PORTION OF THE PROGRAM TO ANOTHER PARTY, YOUR LICENSE IS AUTOMATICALLY TERMINATED.

As required by United States export regulations, you shall not permit export of the program or any direct product of it to any country to which export is then controlled by the United States Office of Export Administration, unless you have that agency's prior written approval and the prior written approval of INTELLISOFT International.

## TERM

The license is effective until terminated. You may terminate it at any time by destroying the program together with all copies and merged portions in any form. It will also terminate upon conditions set forth elsewhere in this Agreement or if you fail to comply with any term or condition of this Agreement. You agree upon such termination to destroy the program together with all copies and merged portions in any form.

## GENERAL

You may not sublicense, assign or transfer the license or the program except as expressly provided in this Agreement. Any attempt otherwise to sublicense, assign or transfer any of the rights, duties or obligations hereunder is void.

This Agreement will be governed by the laws of the State of California, U.S.A.

This license is granted subject to the terms of the INTELLISOFT International Limited Warranty, enclosed with this package, which states that programs are provided "as is" without warranties of any kind, expressed or implied, except that program diskettes are warranted to be free from defects in materials and workmanship for a period of ninety (90) days from the date of delivery. A copy of this limited warranty may be obtained from your dealer or by writing INTELLISOFT International. Should you have any questions concerning this Agreement, you may contact us by writing INTELLISOFT International, 70 Digital Drive, P.O. Box 5055, Novato, CA 94948.

YOU ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT, UNDERSTAND IT, AND AGREE TO BE BOUND BY ITS TERMS AND CONDITIONS. YOU FURTHER AGREE THAT IT IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN US WHICH SUPERSEDES ANY PROPOSAL OR PRIOR AGREEMENT, ORAL OR WRITTEN, AND ANY OTHER COMMUNICATION BETWEEN US RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT.

BOOKMARK™ is a trademark of INTELLISOFT International. Copyright © 1986 by INTELLISOFT International. All Rights Reserved.
Part No. P6000
IBM PC/XT/AT are registered trademarks of International Business Machines Corporation.
AST is a registered trademark of AST Research, Inc. Hercules is a trademark of Hercules Computer Technology.