1  JEFF G. RANDALL (SB# 130811)
   jeffreyrandall@paulhastings.com
2  THOMAS VIGDAL (SB# 252814)
   thomasvigdal@paulhastings.com
3  PAUL, HASTINGS, JANOFSKY & WALKER LLP
   1117 S. California Avenue
4  Palo Alto, CA  94304-1106
   Telephone:  (650) 320-1800
5  Facsimile:  (650) 320-1900

6  Attorneys for Defendant
   INTERNATIONAL BUSINESS MACHINES CORPORATION
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          OAKLAND DIVISION

11

12  BRUCE BIERMAN,                         CASE NO. 4:10-CV-04199 PJH

13            Plaintiff,                   **DEFENDANT INTERNATIONAL
                                           BUSINESS MACHINES' BRIEF IN
14       v.                                SUPPORT OF ESTABLISHING THE
                                           AMOUNT IN CONTROVERSY FOR
15  INTERNATIONAL BUSINESS                 REMOVAL PURPOSES**
    MACHINES CORPORATION; and DOES
16  1 through 100, inclusive,
                                           Judge: The Honorable Phyllis J. Hamilton
17            Defendants.

18

19

20

21

22

23

24

25

26

27

28

1    **I.    INTRODUCTION**

2            On December 8, 2010, the Court ordered International Business Machines ("IBM") to

3    provide "facts showing by a preponderance of the evidence that the amount in controversy

4    exceeds $75,000." (Dkt No. 26 at 3). IBM submits that the evidence supports a finding that the

5    requisite amount in controversy is met based solely on the compensatory damages that Bierman

6    seeks. However, when, as in this case, a plaintiff also seeks punitive damages and statutory

7    attorney fees, those are added to the amount of compensatory damages alleged in determining the

8    amount in controversy. When that is done, there is no doubt that this Court has subject matter

9    jurisdiction — a fact that Bierman himself does not dispute. Indeed, he never sought to remand

10   this case, and he actually concedes in his Amended Complaint that "the matter in controversy,

11   exclusive of interest and costs, exceeds the jurisdictional amount of the Court." This Court

12   should reach the same conclusion for two separate reasons.

13           First, any reasonable estimate of the compensatory damages sought by Bierman supports a

14   determination that that amount exceeds $75,000. The Declaration of Frank Barrese, attached

15   hereto, supports that result. Separately, Bierman's own 1991 valuation of the asset at issue

16   supports a finding the jurisdictional requirement is satisfied.

17           Second, in this case, in addition to compensatory damages, the Court needs to consider

18   both punitive damages and attorneys' fees. Thus, even if the amount of compensatory damages in

19   controversy did not exceed $75,000 — and it clearly does — when all three are considered, the

20   amount unquestionably passes the requisite threshold.

21           If, however, the Court has any doubt, IBM respectfully requests that it be given sixty days

22   to conduct limited discovery relating to the value of Bierman's claims and be given the

23   opportunity to brief the jurisdictional issue after that discovery is complete.

24   **II.    BACKGROUND**

25           Bierman alleges that he developed technology for computer software designed to "prevent

26   the loss of valuable data" due to events such as electrical power fluctuations and hardware

27   breakdowns." (Orig. Compl. ¶ 14.) According to the complaint, he provided IBM with

28   information relating to the technology in 1986. (*Id.* ¶¶ 16, 19). Based on the supposed

IBM'S BRIEF ISO OF ESTABLISHING THE AMOUNT
IN CONTROVERSY                                  -2-                    CASE NO. 4:10-CV-04199 PJH

1   misappropriation of Bierman's trade secrets by IBM, he seeks to recover under seven different

2   causes of action and requests four types of relief — three of which are relevant here.[1]

3        First, he seeks compensatory damages for all of his claims,  including his "actual losses"

4   and "unjust enrichment" under the California Uniform Trade Secret Act ("CUTSA") (Orig.

5   Compl. ¶ 37), "any value" IBM "obtained as a result of its wrongful conduct" under unjust

6   enrichment (Orig. Compl. ¶ 70), and "some or all of such money" that IBM received as "income

7   and gross profits" as a result of its alleged misconduct (Orig. Compl. ¶ 75-76; *see also* Orig.

8   Compl. at 19).  Second, Bierman seeks "punitive damages" under CUTSA (Orig. Compl. ¶ 38)

9   and his fraud theory (Orig. Compl. ¶ 55).  Third, he seeks "an award of reasonable attorneys'

10  fees" under CUTSA (Orig. Compl. ¶ 39; *see also* Orig. Compl. at 19).  Each of these forms of

11  relief are considered in determining the amount in controversy.

12  //

13  //

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26

27  [1] Bierman also seeks injunctive relief.  The value of that relief is not addressed in this
    memorandum because IBM entered into an agreement to sell its personal computing division to
28  Lenovo in late 2004.

IBM'S BRIEF ISO OF ESTABLISHING THE AMOUNT
IN CONTROVERSY                    -3-                    CASE NO. 4:10-CV-04199 PJH

1   **III.     LEGAL STANDARD**

2         Under 28 U.S.C. § 1332(a), "district courts shall have original jurisdiction of all civil

3   actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest

4   and costs."   In determining the amount in controversy, the court looks to the complaint.  In this

5   Circuit, "when the complaint does not contain any specific amount of damages sought, the party

6   seeking removal under diversity bears the burden of showing, by a preponderance of evidence,

7   that the amount in controversy exceeds the statutory amount."  *Lewis v. Verizon Commc'n, Inc.*,

8   No. 10-56512, __ F.3d __, 2010 WL 4645465, at *1 (9th Cir. Nov. 18, 2010),  *citing Guglielmino*

9   *v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).[2]

10        "The amount in controversy is simply an estimate of the total amount in dispute, not a

11  prospective assessment of defendant's liability."  *Lewis*, 2010 WL 4645465, at *5, (*citing*

12  *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) ("'The amount in controversy is not

13  proof of the amount the plaintiff will recover.  Rather, it is an estimate of the amount that will be

14  put at issue in the course of the litigation.'").  Moreover, "[i]n measuring the amount in

15  controversy, a court must 'assume that the allegations of the complaint are true and assume that a

16  jury [will] return[] a verdict for the plaintiff on all claims made in the complaint.'"  *Kenneth*

17  *Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)

18  (quoting *Jackson v. American Bankers Ins. Co. of Florida*, 976 F. Supp. 1450, 1454 (S.D. Ala.

19  1997)).

20

21  [2] Because this Court ordered IBM to provide "facts showing by a preponderance of the evidence
that the amount in controversy exceeds $75,000," that standard is addressed in this memorandum.

22  Under the circumstances of this case, however, the Ninth Circuit has indicated that the standard
may be less. *See Lewis*, 2010 WL 4645465, at *4 (opining that when jurisdictional issues *are*

23  *disputed* "the burden is on the party removing the case from state court to show the exercise of
federal jurisdiction is appropriate."); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376

24  (9th Cir. 1997) (holding that it is appropriate for the district court to accept a plaintiff's judicial
admission that the amount in controversy exceeded the jurisdictional amount).  In this case,

25  Bierman has never contested jurisdiction.  Indeed, he states in his Amended Complaint that "the
matter in controversy, exclusive of interest and costs, exceeds the jurisdictional amount of the

26  Court." (Am. Compl. ¶ 13.)  Thus, since Bierman does not contest the jurisdictional amount,

27  rather than a "preponderance of the evidence" standard, the jurisdictional requirement should be
considered "presumptively satisfied unless it appears to a 'legal certainty' that the plaintiff cannot

28  actually recover that amount."  *Guglielmino*, 506 F.3d at 699.

1    A removing party's burden is "not 'daunting'," and a defendant is "*not* obligated to

2    'research, state, and prove the plaintiff's claims for damages'" to establish the amount in

3    controversy. *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008)

4    (emphasis in original). "The ultimate inquiry is what amount is put 'in controversy' by the

5    plaintiff's complaint, not what a defendant will *actually* owe." *Id.* at 1205 (emphasis in original).

6    In determining the amount in controversy, in addition to compensatory damages, punitive

7    damages and attorneys' fees are included in the calculation. *Gibson v. Chrysler Corp.*, 261 F.3d

8    927, 945 (9th Cir. 2001) ("It is well established that punitive damages are part of the amount in

9    controversy in a civil action."); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)

10   ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with

11   mandatory or discretionary language, such fees may be included in the amount in controversy.").

12   **A.      The Damages Sought By Bierman Are Greater Than $75,000.**

13   **1.      Based on evidence submitted by IBM, the jurisdictional amount in
                controversy for purposes of subject matter jurisdiction would, more
14              likely than not, exceed $75,000.**

15   In its December 10th Order, the Court questioned the relationship between the revenue

16   received by IBM's Personal Computing Division and the amount actually in controversy in this

17   action. (Dkt No. 3 at 3.)[3]   Therefore, in an attempt to ascertain the amount of revenues at issue,

18   IBM reviewed available information relating to IBM's version of the "suspend/resume" function

19   that Bierman alleges to have created and for which he alleges trade secret protection. Based on

20   that review, which included a review of the maintenance records and the product announcements

21

22

23   [3] In its original removal papers (Dkt No. 1 at 4), IBM understood, based on the allegations in the
     complaint, that Bierman was seeking all of IBM's revenue from its personal computing systems.
24   This understanding was grounded in the fact that IBM never sold anything resembling Bierman's
     alleged technology as a standalone product, and nowhere in Bierman's complaint does he seek an
25   apportionment of revenue that separates whatever value his alleged technology would have added
     if used in IBM's products. Instead, Bierman alleges that it would be "unjust for IBM to retain
26   any value it obtained as a result of its wrongful acts," — *i.e.*, it would be unjust for IBM to keep
     any value it obtained in the selling of IBM computers that allegedly contain Bierman's trade
27   secrets. Bierman has not disavowed that theory. Therefore, to the extent that he fails to do so in
     his response, the removal papers meet IBM's burden.
28

1   for that function, the amount in controversy exceeds 10 times the jurisdictional requirement of

2   more than $75,000.  (Decl. of Frank Barrese ¶¶ 3-4.)[4]

3         This type of evidence is more than sufficient to meet IBM's burden.   In *Lewis*, for

4   example, a declaration stating the total amount of Verizon billings for the relevant time period

5   exceeded the jurisdictional amount was sufficient.  *Lewis*, 2010 WL 4645465, at *2, 5.  And in

6   *Singer*, the plaintiff's admission that the amount in controversy was met was held sufficient.

7   *Singer*, 116 F.3d at 376.  A declaration that the amount in controversy for the specific function at

8   issue exceeds 10 times the jurisdictional amount falls well within Ninth Circuit standards.

9         Moreover, punitive damages need to be considered.  Typically, those damages may be

10  shown by "evidence of jury verdicts in cases involving analogous facts."  *Simmons v. PCR Tech.*,

11  209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002).[5]  All that need be shown is the "potential" for the

12  award in the same type of cases, even if the cases are factually distinguishable.  *Id.*

13        A review of trade secret/fraud based cases, reveals that the award of punitive damages has

14  the potential to be very high.  In *Baker Hughes, Inc. v. Varel Holding, Inc.*, No. 2009-7553, 2010

15  WL 2031659 (Tex. Dist. Apr. 22, 2010) (verdict summary), for example, the plaintiff alleged that

16  the defendant used the plaintiff's trade secrets to design what became the defendants' best-selling

17  drill bit.  The jury awarded $7,443,936 in actual damages and $17,846,808 in punitive damages.

18  (Decl. of Thomas Vigdal Ex. 1.)  Like the plaintiff in *Baker Hughes*, Bierman alleges that IBM

19  used his trade secrets in a widely sold product.

20

21

22  [4] The task is a difficult one for two reasons.  First, IBM's version of the "suspend/resume"
    function was invented by IBM in 1984, long before Bierman allegedly spoke with anyone from
    IBM.  Therefore, financial information regarding revenues for IBM's technology was likely not
23  retained pursuant to IBM's standard business practices.  Second, IBM entered into an agreement
    to sell its personal computing division to Lenovo in late 2004, and therefore, to the extent any
24  financial information existed at that time regarding IBM's "suspend/resume" function, it was
    likely transferred in the divestiture.
25

26  [5] This standard can be applied to Bierman's fraud claim, but not to his misappropriation claim.
    Under California law, punitive damages based on a claim of misappropriation of a trade secret are
27  determined by the court.  Cal. Civ. Code § 3426.3(c) ("If willful and malicious misappropriation
    exists, the court may award exemplary damages in an amount not exceeding twice any award
28  made under subdivision (a) or (b).").

1    Similarly, in *Bohnsack v. Varco*, No. 4:08-cv-01481, 2010 3967740 (S. D. Tex.  Sept. 9,

2    2010) (verdict summary), the plaintiff claimed that Varco fraudulently misappropriated

3    Bohnsack's trade secrets.  Specifically, Bohnsack allegedly entered into a secrecy agreement with

4    Varco to manufacture and market a device of Bohnsack's invention to facilitate the flow of used

5    drilling fluid for holding containers.  Varco supposedly misappropriated that information for its

6    own use.  The plaintiff sought $2.45 million in compensatory damages and $5 million in punitive

7    damages.  The jury awarded $600,000 in compensatory damages on the trade secrets and fraud

8    claims and $5 million in punitive damages on the fraud claim.  (Decl. of Thomas Vigdal Exs. 2,

9    3.)  Based on *Baker Hughes* and *Bohnsack*, there should be no doubt that there are allegations

10   supporting a "potential" for a significant punitive damage award in this case.

11   And while California case law is sparse, what exists indicates that an award of twice the

12   amount of compensatory damages or the amount of a reasonable royalty award is in line with

13   California law on punitive damages.  *E.g.*, *02 Micro Int'l Ltd v. Monolithic Power Sys., Inc.*, 399

14   F. Supp. 2d 1064, 1079-80 (N.D. Cal. 2005) (awarding exemplary damages equal to twice the

15   amount of the royalty award).  Under that standard, an award of even one dollar over $25,000 in

16   compensatory or royalty damages — *i.e.*, the amount required for Bierman to file in the superior

17   court in California and which Bierman asserted existed (*see* Orig. Compl. ¶ 13) — is enough to

18   meet the amount in controversy requirement.

19   Finally, attorneys' fees need to be added to the equation.  IBM understands that this Court

20   has previously decided that attorneys' fees only include those incurred as of the date of removal

21   primarily based on the Court's concern that to do otherwise would be speculative.  *Icard v.*

22   *Ecolab, Inc.*, 2010 U.S. Dist. LEXIS 69694 *6 (N.D. Cal. June 18, 2010) (Hamilton, J.) (holding

23   that "when estimating attorney's fees for the purposes of establishing jurisdiction, the fees that

24   should be considered are those incurred as of the date of removal").  Other courts in this district

25   have held to the contrary.  *Simmons*, 209 F. Supp. 2d at 1034-35 (holding that attorneys' fee

26   include those "that can reasonably be anticipated at the time of removal, not merely those already

27   incurred").  IBM respectfully requests that the amount of attorneys' fees through at least the

28

IBM'S BRIEF ISO OF ESTABLISHING THE AMOUNT
IN CONTROVERSY                         -7-                    CASE NO. 4:10-CV-04199 PJH

1 | motion to dismiss stage be considered.  That amount should be determined easily and is not

2 | speculative.

3 | In sum, the amount of compensatory damages at issue should, standing alone, satisfy

4 | IBM's burden.  The addition of punitive damages and attorneys' fees should put the question of

5 | whether the jurisdictional amount is met to rest.  It does.

6
7

> **2.     Based on Bierman's 1991 asset sale agreement, the damages would, more likely than not, exceed $75,000.**

8 | There is a separate, independent reason as to why the damages alleged would, more likely

9 | than not, exceed $75,000.  In 1991, Bierman entered into and Asset Purchase and Sales

10 | Agreement with his mother.  (Dkt No. 20, Declaration of Bruce Bierman Ex. A.)  The purchaser

11 | paid $80,000 for the assets covered by the agreement, including the "software also known as

12 | Bookmark." (*Id.* at p. 4.)   A close reading of the agreement reveals that the only property that

13 | Bierman represented to have value was the Bookmark software at issue in this case.  Specifically,

14 | the agreement states that, for that technology, "[t]here is future income estimated from the

15 | payment of royalties from the licenses to be granted, or granted from the Property listed in

16 | Section 1a-i and Section 1a-ii, respectively." (*Id.* at p.3, Section b-v.)   No such representation is

17 | made for any of the other assets.  Thus, it is reasonable to conclude that the $80,000 represented

18 | what Bierman considered the value of the software to be in 1991.

19 | Given that the $80,000 value was placed on the asset almost 20 years ago, it is equally

20 | reasonable to conclude, based on the allegations in Bierman's complaint, that the value has

21 | increased since 1991.  Indeed, the complaint repeatedly refers to the technology as a "valuable

22 | commercial asset," the alleged use by IBM of which "greatly" damaged Plaintiff.  (Compl. ¶¶ 34,

23 | 40, 42.)  For this reason alone, the evidence supports a determination that the jurisdictional

24 | requirement has been met.

25
26

> **B.     In The Alternative, IBM Requests That It Be Permitted To Undertake Limited Discovery.**

27 | The Ninth Circuit has recognized that limited discovery relating to jurisdictional amount

28 | may be appropriate. *E.g.*, *Gibson v. Chysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001) (*citing*

1    *McGraw v. Lyons*, 863 F. Supp. 430, 435 (W.D. Ky. 1994)); *accord McPhail*, 529 F.3d at 954.

2    When, as in this case, Bierman has never disputed that the amount in controversy exceeds

3    $75,000, such discovery regarding his claims could be narrowly tailored to determine the amounts

4    he seeks to recover.  Such an approach would not prejudice Bierman.  And, to the extent the

5    Court has any doubt about whether the amount in controversy requirement has been met, it would

6    provide IBM with the opportunity to provide any additional evidence the Court determines may

7    be necessary to prevent an unfair result.

8    **IV.    CONCLUSION**

9         As demonstrated above, Bierman's claims meet the jurisdictional threshold of greater than

10   $75,000.  IBM therefore respectfully requests that this Court retain jurisdiction.

11

12

13   DATED:  December 15, 2010          Respectfully submitted,

14                                      PAUL, HASTINGS, JANOFSKY & WALKER LLP

15                                      By: _____/s/ *Thomas Vigdal*_____

16                                              JEFF R. RANDALL
                                                THOMAS VIGDAL

17

18                                      Attorneys for Defendant
                                        INTERNATIONAL BUSINESS MACHINES
19                                      CORPORATION

20

21

22

23

24

25

26

27

28